Hydeville Co. *v.* Barnes.

---

HYDEVILLE COMPANY *v.* WILLIAM F. BARNES.

*Book Account. Partnership.*

Under the act of 1852, (§ 18, p. 344, G. S.), courts have no power to settle general and extensive partnership dealings in book actions.

BOOK ACCOUNT. The auditors reported as follows: On the 19th of May, 1859, the plaintiff submitted to the defendant the following proposition in writing:

"HYDEVILLE, May 19th, 1859.

W. F. BARNES, Esq.,—*Dear Sir:*—We have concluded to lease you the working of our Pratt quarry for a term of years, say three or five, as we have talked. You shall take the quarry and tools as

they now are, and keep and return the same at the end of the time agreed on in as good order, and the quarry in as good condition to quarry from as it now is. You may call on Moses Humphrey to make a schedule of the tools and property that we may attach it to the contract. We will advance you on all the No. 1 and 2 blocks, ten cents per foot, if it cost so much to quarry them, in our notes at four months at the bank, on the tenth of each month, for all esti- mated on the first of the month and delivered on the cars, and charge an equal amount for sawing to that advanced. All other ex- penses after they leave the quarry to be charged in account against said stock, and when sold by our agent, to be employed for that pur- pose, the nett proceeds are to be equally divided, after paying all ad- vances, and expenses to agents, &c. Should there be any sound marble quarried that the Hydeville Company refuse to advance on, and the said Barnes insists on having sawed, he has the right to send it, which stock is to be sawed on the same conditions as above, ex- cept the advances. The Hydeville Company further agree to ad- vance a sum not exceeding one thousand dollars as above, if it should cost so much previous to furnishing their mill with 'stock, to be laid out on the quarry and be drawn for, one-half the first month as above, all of which shall be applied on the estimates within six months from the working of said quarry. It is further proposed that no more than ten thousand feet shall be estimated per month unless agreed to by the parties, and also the one hundred dollars yearly rent to be paid Pratt shall be paid equally by the parties, no charge to be made for use of tools now on the quarry.

Respectfully,      The Hydeville Company,<br>By A. W. HYDE."

The proposal was accepted verbally by the defendant.

The plaintiffs' claims in the statements presented to the aud- itors, consisted of marble, and notes and advances made for work- ing said quarry, in pursuance of the terms of the written propo- sition.

The said parties never had any accounting or settlement in any of the branches of this business, indicated by the statements of account presented, up to the hearing, but the whole, disbursements and pro- ceeds, remained open and unsettled.

It further appeared that there is a large amount of the avails of the working of said Pratt quarry in notes and accounts still due the plaintiff and the defendant, and some property on hand unsold, which has not been divided or distributed between said parties; but remains the joint property of the plaintiffs and defendant.

The auditors decided that the accounts contained in these several statements presented, were matters of partnership accounting, and upon that ground were excluded from their consideration in this form of action, with the exception of items of private account to the amount of $159.92. which was found due from the defendant to the plaintiffs to balance book account between them.

The plaintiffs excepted to the report on the ground of the auditors' exclusion of the partnership accounts from their consideration.

The cause was heard at the September Term, 1864, KELLOGG, J., presiding, on the said report and exceptions; and, on the hearing, the court, *pro forma*, overruled the plaintiffs' said exceptions, and rendered judgment in favor of the plaintiffs on said report for $159.92. damages. To this decision and judgment the plaintiffs excepted.

*E. Edgerton* and *Dewey & Joyce*, for the plaintiffs.

There are three items which are conceded to be proper to be adjusted in the action of book account. These items are sufficient to give the court jurisdiction of the whole account between the parties. G. S., ch. 41, § 18, p. 344; *Green & Roberts* v. *Chapman*, 27 Vt. 236; *Duryeo* v. *Whitcomb*, 31 Vt. 395. The act should be so construed as to effectuate the intention of the legislature, *i. e.*, to avoid multiplicity of suits.

*The form* of the action is as well adapted to try and adjust partnership deal as the action of account.

The charges made by the Hydeville Company for the advance of money for the working of the quarry, are properly items of book account. They are items of private deal.

*Prout & Dunton*, for the defendant.

The company portion of this account cannot be recovered in this action. The partnership debts had not been collected or the company property converted into money. Under such circumstances, either a bill in chancery, account at common law, or account under

the act of 1852, (No. 10,) is the appropriate remedy. Chitty on Pl., vol. 1, p. 39; *Green & Roberts* v. *Chapman et al.*, 27 Vt. 239; *Spear & Carlton* v. *Newell*, 13 Vt. 288; *Judd et al.* v. *Wilson*, 6 Vt. 185; *Albee* v. *Fairbanks*, 10 Vt. 314; *Warren* v. *Wheelock*, 21 Vt. 323.

The action of book account brought for the purpose of closing a general partnership account, is not the appropriate action for that purpose. Acts of 1852, Nos. 10 and 11.

PIERPOINT, J. The first question to be considered is whether the co-partnership business of these parties, in the quarrying, manufacture and sale of marble, can legally be adjusted and settled in the action of book account.

By the act of 1852, § 18, p. 344, G. S., it was provided that "whenever on the trial of any action on book account, it shall appear to the court that any item or items of account, or deal, between the same parties, more properly belongs to the action of account, the same may be tried and adjusted in the action of book account."

It is claimed by the plaintiff that this act is sufficient to authorize the court to adjust and settle the account in question in this action; but we think it was not the intention of the legislature to give to courts the power to settle general and extensive partnership dealings in this way. This we think is clearly indicated by the language of the act itself. The terms, "any item or items of account or deal," seem to indicate that the legislature had in mind those single and simple transactions that ordinarily occur between men, growing out of the joint ownership or occupation of property, or where they have such a joint interest in the transactions, that the action of account would be the proper one in which to settle them by legal proceeding, but where from the nature and limited extent of the business, it could be as well settled in the action of book account, and thus save the expense of another suit. It is in the experience of every lawyer that in the adjustment of accounts in the action on book, before this statute, that items were encountered that had to be thrown out, because they could be adjusted only in the action of account, but which all could see might just as well be settled in the

book action, so far as the interests of the parties were concerned; and it was, undoubtedly, to obviate this difficulty that the statute was passed, and not for the purpose of having extensive and complicated partnership transactions settled in this form of action.

The power of the courts in actions on book are wholly inadequate to the settlement of such extensive and complicated co-partnership matters, and in the action of account, it has always been held that such action would not lie to settle co-partnership accounts where there were more than two co-partners, and even in such cases the court of chancery was ordinarily resorted to in consequence of the limited power of the common law courts.

When the legislature by a recent act provided that all co-partnership accounts, irrespective of the number of co-partners, might be settled and adjusted in the action of account, they found it necessary also to provide that in such action, when brought for such a purpose, the common law courts should have full chancery powers. But the legislature has not given such power to the court in actions of book account, although the act we are now considering was passed at the same session with the act last above referred to; thus showing quite clearly that the legislature did not understand that by the act in question they were giving the courts power to settle general and extensive co-partnership dealings in the action of book account.

The plaintiffs further insist that the advances made by them according to the terms of the contract, constitute a private claim against the defendant, and should have been allowed and adjusted in this action. No question of this kind appears to have been made in the county court. The only exception filed to the auditors' report was, that the "auditors excluded from their consideration the co-partnership accounts"; but as the question has been raised and discussed here, and as we are entirely unanimous in our views as to it, perhaps it is not improper that we should express them.

We think it perfectly clear that it was not the understanding of the parties that the advances to be made by the plaintiffs were to constitute a private individual claim against the defendant, that could be sued for and collected of him, independent of the co-partnership

business, and before that was settled and adjusted; because, by the express terms of the contract, the plaintiffs were to be reimbursed for such advances, out of the proceeds of the business. Whether that will be sufficient or not, is a question that can only be determined by a settlement of the copartnership affairs. It is like one co-partner putting into the concern more than his proportion of the capital to be taken out before a division.

Judgment of the county court is affirmed.